Ryan J. Schriever (Bar No. 10816)
THE SCHRIEVER LAW FIRM
P.O. Box 701
Springville, UT 84663
Telephone: (801) 574-0883
Fax: (801) 515-8686
ryan@schrieverlaw.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| MARTIN CROWSON,<br><br>        Plaintiff,<br><br>vs.<br><br>WASHINGTON COUNTY, et al.,<br><br>        Defendants. | **MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**<br><br>Case No. 2:15-CV-880-RJS<br><br>Judge Robert J. Shelby |

Plaintiff Martin Crowson, by and through counsel, submits this Memorandum in Opposition to Motion to Dismiss.

## INTRODUCTORY STATEMENT

The issues raised by the Washington County Defendants are typically raised in a motion for summary judgment, no in a Rule 12(b)(6) motion to dismiss. At this early stage of the litigation, the Defendants are in nearly exclusive possession of the most pivotal facts. Mr. Crowson does not know all of the facts because he laid incoherent for six days in solitary confinement with a serious brain injury while the defendants ignored his obvious symptoms and delayed his access to essential emergency medical treatment.

The Court should deny these defendants' Motion to Dismiss because they should not be allowed to avoid liability for their role in the deliberate indifference of Crowson's serious medical needs prior to allowing Crowson an opportunity to conduct discovery.

## **OPERATIVE COMPLAINT**

The operative complaint is now the Amended Complaint that was filed on March 14, 2016. The plaintiff has filed a separate Motion to Strike asserting that the plaintiff must have filed his Amended Complaint by March 9, 2016. (Doc. 10.) That is erroneous. The filing deadline for an amended complaint was March 14, 2016.

The Motion to Dismiss was filed on February 17, 2016. Federal Rule of Civil Procedure 15(a)(1)(B) allows a party to amend its pleading within "21 days after service of a motion under Rule 12(b) . . ." Fed. R. Civ. P. 15(a). Federal Rule of Civil Procedure 6(d) states that "[w]hen a party may or must act within a specified time after service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a)." Fed. R. Civ. P. 6(d). Federal Rule of Civil Procedure 5(b)(3) states that "[i]f a local rule so authorizes, a party may use the court's transmission facilities to make service under Rule 5(b)(2)(E)" which provides for service by electronic means. Fed. R. Civ. P. 5(b)(2)(E), (b)(3).

In this case, the defendants used the Court's electronic filing system to generate notice to the plaintiff. Pursuant to Rule 5(b)(3), that constituted service under Rule 5(b)(2)(E), which meant an additional three days were added to the filing deadline under Rule 6(d). Therefore, the filing deadline was 21 days plus three, placing it on March 12, 2016.

March 12, 2016 was a Saturday. Rule 6(a)(3) states that "if the clerk's office is inaccessible on the last day for filing under Rule 6(a)(1), the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday . . ." That meant the plaintiff's Amended Complaint needed to be filed on the following Monday, March 14, 2016. For these reasons, the plaintiff's Amended Complaint was timely filed and is now the operative complaint.

## **RELEVANT ALLEGATIONS**

The only defendants who have entered an appearance are Washington County and Sheriff Cory C. Pulsipher. The other defendants will be served shortly, and will presumably enter their appearances. Even if the Court were to grant this Motion to Dismiss, it could only be a dismissal as to Washington County and Sheriff Pulsipher. It would not be a dismissal as to all of the defendants.

Portions of the Washington County Defendants' Motion to Dismiss are critical of the allegations in the Complaint as they pertain to the individual defendants. However, the individual defendants have not yet been served and they have not entered appearances. Accordingly, the plaintiff will limit his argument to the allegations made against the Washington County Defendants because the Washington County Defendants are the only defendants who have motioned the Court for dismissal. For purposes of providing context, however, the following allegations are relevant for the Court's consideration.

As set forth in the Complaint and the Amended Complaint, Martin Crowson was incarcerated at the Purgatory Correctional Facility on June 16, 2014. (Am. Compl. ¶15; Compl. ¶15.) Nine days later, Crowson began demonstrating symptoms of cognitive

deficiencies that were serious and required emergent medical care. (Compl. ¶16.) Rather than providing Crowson the treatment he required, correctional officer Bret Lyman placed him in solitary confinement in a "detox cell" for observation. (Am. Compl. ¶16; Compl. ¶17.)

Crowson remained in solitary confinement for three days without medical attention even though Michael Johnson noted Crowson was exhibiting severe symptoms of a cognitive injury including an inability to communicate effectively, dilated pupils, and an inability to remember significant things like the type of work he performed prior to his incarceration. (Am. Compl. ¶17-18; see Compl. ¶16.) By June 28, 2014, Michael Johnson observed that Crowson appeared confused, disoriented, gave one word answers to questions and had elevated blood pressure. (Am. Compl. ¶19; see Compl. ¶16.) Ignoring obvious symptoms of a brain injury, the prison doctor did not order any examination of Crowson's head, brain or mental capacity. (Am. Compl. ¶20; Compl. ¶18-20.) Instead, the doctor asked Crowson to take deep breaths and when Crowson was unable to comply with that simple request, the doctor ordered a chest X-ray. (Am. Compl. ¶21; see Compl. ¶17, 19.)

On day three or four of Crowson's solitary confinement, Judd Larowe prescribed Librium and Ativan for Crowson for detoxification despite the fact that Crowson could not have access to any alcohol or drugs as he had been confined in a cell by himself. (Am. Compl. ¶22; Compl. ¶20.) To make matters worse, Larowe prescribed excessive dosages of the medications which caused, contributed and/or exacerbated Crowson's already serious medical condition. (Am. Compl. ¶22; Compl. ¶20.)

On that day, Michael Johnson noted Crowson had an elevated heart rate, a significant sign that someone is in distress, but the medical and correctional staff ignored Crowson's symptoms for three days before providing him the emergency medical treatment he had required from the beginning. (Am. Compl. ¶23-25.)

On July 1, 2014, Crowson finally verbalized something other than a one-word answer to questions, but the staff still noted that his physical responses were notably delayed. (Am. Compl. ¶25; Compl. ¶21.) On that day, Ryan Borrowman ordered Crowson to be transported to the Dixie Regional Medical Center Emergency Room. (Am. Compl. ¶26; Compl. ¶21.)

The doctors and medical staff at Dixie Regional Hospital diagnosed Crowson with swelling of the brain, i.e. encephalopathy. (Am. Compl. ¶36; Compl. ¶23.) According to the speech pathologist at Dixie Regional, Crowson was displaying "severe deficits crossing all cognitive and expressive modalities." (Am. Compl. ¶40; Compl. ¶27.) The physicians were explicit that Crowson's condition was not related in any to alcohol withdrawal. (Am. Compl. ¶41; Compl. ¶28.) The delay in treatment and the improper use of Librium worsened Crowson's condition in that it exacerbated his encephalopathy and caused other conditions including serious liver problems. (Am. Compl. ¶42-44; Compl. ¶29-30.)

The Amended Complaint alleges that Sheriff Pulsipher and the Washington County defendants are vicariously liable for the actions of the individual defendants under the doctrine of *respondeat superior*. (Am. Compl. ¶45.) The Amended Complaint further alleges that "[u]pon information and belief, Washington County, Washington Purgatory Correctional Facility, Washington County Sheriff's Department and Sheriff Cory Pulsipher

had policies in place designed to deprive inmates of their right to remain free of cruel and unusual punishment by improperly denying inmates like Crowson access to reasonable and necessary medical care." (Am. Compl. ¶46.)

## ARGUMENT

### I. THE WASHINGTON COUNTY DEFENDANTS' MOTION TO DISMISS IS MOOT BECAUSE THE AMENDED COMPLAINT IS NOW THE OPERATIVE COMPLAINT

The Court should dismiss the Washington County Defendants' Motion to Dismiss as moot because it was based on the original complaint which has been supplanted by the Amended Complaint. *See e.g.*, Albers v. Board of County Commissioners of Jefferson County, 771 F.3d 697 (10th Cir. 2014) ("Upon the filing of the Third Amended Complaint, the district court dismissed the County's First Motion to Dismiss as moot.").

### II. STANDARD OF REVIEW FOR MOTION TO DISMISS

When considering a motion to dismiss under Rule 12(b), the District Court "must accept all allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Even under *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Court may allow a well-pleaded complaint to proceed "even if it strikes a savvy judge that actual proof of those facts in improbable, and that recovery is very remote and unlikely." *Id. Twombly* states "that the complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Robbins,* 519 F.3d at 1247 (citing *Twombly*, 127 S.Ct. at 1974). "'[P]lausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from

conceivable to plausible." *Id.* "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.*

Normally, the viability of a §1983 claim is raised in a Motion for Summary Judgment under Rule 56. *See e.g., Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005); *Self v. Crum*, 439 F.3d 1227 (10th Cir. 2006); *Sealock v. State of CO*, 218 F.3d 1205 (10th Cir. 2000). That is because the issues are highly fact intensive, the parties are entitled to conduct discovery, and because the Courts do not require heightened pleading, only plausibility. It is rare for courts to address the viability of §1983 claim on a Rule 12(b) Motion to Dismiss.

In *Robbins*, the Tenth Circuit noted that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context . . ." *Robbins*, 519 F.3d at 1248. In the context of a §1983 claim, "plaintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time. This requires enough allegations to give the defendants notice of the theory under which their claim is made." *Id.* at 1249.

"This does not mean that complaints in cases subject to qualified immunity defenses must include all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." *Id.* However, the complaint must contain "allegations sufficient to make clear the 'grounds' on which the plaintiff is entitled to relief." *Id.*

In this case, the Amended Complaint (and the original Complaint) contain sufficient allegations to put the defendants on notice of the grounds for the lawsuit, and it provides sufficient notice to the defendants that they can adequately investigate the case and

prepare their defenses.  In *Brown v. Plata*, 131 S.Ct. 1920 (2011), the U.S. Supreme Court found constitutional violations based on "system wide deficiencies in the provision of . . . mental health care that, taken as a whole, subject ... mentally ill prisoners in California to 'substantial risk of serious harm' and cause the delivery of care in the prisons to fall below the evolving standards of decency that mark the progress of a maturing society." *Id.* at

In this case, the conduct of multiple individual defendants shows that there was a pattern of behavior, i.e. a systemic failure of the system to provide ready access to adequate medical care."  The Amended Complaint specifically identifies multiple individuals and John Doe defendants who committed specific acts involving Crowson at the Purgatory Correctional Facility over a six-day period of time.  These multiple acts by various people are evidence that Washington County and Sheriff Pulsipher had policies that encouraged and promoted deliberate indifference.

The Court should deny the Washington County defendants' Motion to Dismiss because the plaintiff has alleged sufficient facts to show that it is plausible he will prevail on his claims. *Graves v. Arpaio*, 48 F.Supp.3d 1318, 1326 (D. Ariz. 2014) (finding liability against the Sheriff of Maricopa County for constitutional violations when he failed to resolve "systemic deficiencies in providing pretrial detainees timely face-to-face assessment by medical and mental health providers for serious acute or chronic complex conditions."); *see also Schwartz v. Lassen County ex rel. Lassen County Jail (Detention Facility)*, 838 F. Supp. 2d 1045 (E.D. Cal. 2012).  He has alleged that Washington County and Sheriff Pulsipher were responsible for running a correctional facility that had a policy

of placing inmates in solitary confinement for doing nothing more than demonstrating symptoms of a significant brain injury.

On day nine of his incarceration, Crowson appeared dazed and confused. He was not able to answer questions coherently with anything more than one word responses. His pupils were dilated. So following policy and procedures, Officer Bret Lyman put him in solitary confinement in a detox cell. For the next six days, the staff and officers at Purgatory Correctional Facility followed policies and procedures when they ignored Crowson's objectively obvious brain injury symptoms and provided Crowson with completely inadequate and improper care.

Rather than immediately sending Crowson to an outside emergency room for adequate care, the prison staff followed Washington County's and Sheriff Pulsipher's policy of providing minimal treatment, which in Crowson's case consisted of a lung X-ray and an overdose of Librium. The prison staff did not conduct any testing or treatment for a brain injury other than to repeatedly note that Crowson was demonstrating significant symptoms of cognitive decline. The Constitution requires a prison to have policies that require its staff to do more than sit back and watch an inmate's cognitive function decline over multiple days.

The policies put in place by Sheriff Pulsipher and Washington County encouraged and promoted the deliberate indifference of the corrections officers and facility medical staff. Those policies also encouraged an unconstitutional delay in providing adequate care. In *Brown v. Plata*, 131 S.Ct. 1910 (2011), Justice Kennedy expressed concerns about a delay of eight hours to a prisoner who was experiencing chest pain due to the systemic failure of the California prison system.

If a person were to enter a hospital emergency room demonstrating the same symptoms Crowson displayed, the emergency room personnel would immediately begin assessing him for a brain injury.  The emergency personnel would take immediate action, or they would be sued for malpractice.  They would not wait days, hours, or even minutes to initiate diagnostic testing of the patient's brain and cognitive function.

Washington County and Sheriff Pulsipher, on the other hand, established polices that, when followed, encouraged prison staff to ignore serious brain injury symptoms for multiple days.  The policies in place dictated that prison staff allow Crowson to deteriorate for a nearly a week before they transported him to the hospital.  They should be held accountable for their deliberate indifference of Crowson and others in his situation.

At the very least, Crowson should be entitled to conduct discovery before the Court enters the harsh result of dismissing his claims.  Crowson was seriously injured, and his allegations are sufficient to demonstrate a plausible claim for damages against Washington County and Sheriff Pulsipher.

The Washington County Defendants have argued that Crowson has not alleged every fact necessary to prove his claims, but that is not the standard of review for a motion to dismiss.  These defendants will have the option of filing a motion for summary judgment after the facts have been developed.  At that stage of the litigation, the burden will be on Crowson to show admissible evidence to prove his claims.

### III. CROWSON HAD A CLEARLY ESTABLISHED RIGHT TO READY ACCESS TO ADEQUATE MEDICAL CARE

The Washington County Defendants have argued that Crowson has the burden of establishing a clearly established constitutional right.  That right is clearly established in the case law.  Under the Eighth Amendment, prison officials must provide a system of

ready access to adequate medical care, including mental health care, that provides access to medical staff who are competent to examine inmates, diagnose illnesses, and treat medical problems or refer inmates to those who can. U.S.C.A. Const. Amend. 8. *See e.g.,* Coleman v. Brown, 938 F.Supp.2d 955, 979 (E.D. Cal. 2013) (holding inmates with serious mental illness in prolonged isolated confinement may cause serious illness and needless suffering in violation of the Eighth Amendment); *Paine v. Cason*, 678 F.3d 500 (7th Cir. 2012) (denying qualified immunity to defendant who did nothing to alert other personnel at stationhouse of an inmate who was behaving in mentally unstable way); *Catanzaro v. Harry*, 848 F. Supp. 2d 780 (W.D. Mich. 2012) (holding a prisoner's complaint, alleging that prison employees and medical personnel denied him adequate medical care for his high blood pressure and toenail fungus, stated claim for deliberate indifference to his medical needs); Varricchio v. County of Nassau, 702 F. Supp. 2d 40 (E.D. N.Y. 2010) (detainee adequately alleged that inappropriate medical care received while incarcerated constituted cruel and unusual punishment when he averred that he was improperly medicated on two occasions, resulting in his heart rate slowing down to as low as 15 beats per minute, and speeding up to rate of over 125 beats per minute.)

Crowson has alleged sufficient facts to show that there is a plausible likelihood he will show that his constitutional right to medical care for serious medical needs was clearly established. For that the Court should deny the Defendants' Motion to Dismiss.

IV. **THE ALLEGATIONS ARE SUFFICIENT TO SHOW A PLAUSIBLE CLAIM OF DELIBERATE INDIFFERENCE**

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 102 (1976). "'Deliberate indifference' involves both an objective and a subjective component. The objective

component is met if the deprivation is 'sufficiently serious.'" *Sealock v. State of Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  " [A] delay in medical care . . . constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." *Mata*, 427 F.3d at 751. "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Id*. (quotation omitted); *see also Colbert ex rel. T.D.S. v. Bd. of County Comm'rs for Oklahoma County*, 414 Fed.Appx. 156 (10th Cir. 2011).

### A. CROWSON'S SYMPTOMS WERE OBJECTIVELY OBVIOUS SYMPTOMS OF BRAIN INJURY OR COGNITIVE INSULT

A jury could reasonably conclude that Crowson's cognitive symptoms were objectively obvious symptoms of a brain injury and/or cognitive insult. "A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Sealock*, 218 F.3d at 1209; *see, e.g., King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (recognizing that "medical conditions much less serious than seizures have satisfied" the objective seriousness standard).

Crowson demonstrated objective symptoms of a serious brain injury that lasted at least six days.  He was dazed and confused, unable to remember simple things, and responding with only one word answers.  These facts show it is plausible Crowson can prevail that his serious medical need was objectively obvious.

### B. THE SUBJECTIVE ELEMENT IS SATISFIED BY THE FACT THAT THE DEFENDANT'S DELAY CAUSED UNNECESSARY PAIN AND WORSENING OF CROWSON'S CONDITION

"The subjective component is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'" *Sealock*, 218 F.3d at 1209 (*quoting Farmer*,

511 U.S. at 837). In addition, "[a] prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of her condition. Even a brief delay may be unconstitutional." *Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005) *citing Sealock*, 218 F.3d at 1210 (delay of "several hours" in taking inmate with chest pains to hospital violated Eighth Amendment); *Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir. 1991) ("prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering"); *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) (few hours delay in treating inmate's broken foot could render defendants liable); *Lewis v. Wallenstein*, 769 F.2d 1173, 1183 (7th Cir. 1985) (fifteen minute delay in treating inmate in cardiac arrest may violate Eighth Amendment).

The Tenth Circuit has also recognized that a jury may infer conscious disregard where a provider misdiagnoses an obvious risk and then responds to that risk with treatment that is patently unreasonable. *See, e.g., Blackmon v. Sutton*, 734 F.3d 1237, 1245 (10th Cir. 2013) (*citing Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976)) (evidence was sufficient to show conscious disregard to a substantial risk of serious harm where prison staff provided an inmate with mild antacids in response to a badly bleeding ulcer); *Oxendine v. Kaplan*, 241 F.3d 1272, 1278-79 (10th Cir. 2001) (holding that a prison doctor could be liable for deliberate indifference when, in response to a gangrenous finger, insisted the finger was heeling and prescribed Tylenol to treat the pain).

The Court should also note that "[w]hether a prison official had knowledge of and disregarded a substantial risk of serious harm is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence."

*Colbert*, 414 Fed.Appx.156 (citation omitted).  "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* "This is so because if a risk is obvious so that a reasonable man would realize it, we might well infer that the defendant did in fact realize it." *Id.* (*quoting Mata*, 427 F.3d at 752).

In Crowson's case, there was an unreasonable delay of six days.  The defendants misdiagnosed him in a grossly negligent manner and ignored his serious need for medical attention.  For these reasons, the Court should deny the Defendants' Motion to Dismiss.

V. **ALLEGATIONS OF VIOLATION OF UTAH CONSTITUTION**

The defendants have argued that the plaintiff "may not assert a damage claim under the Utah State Constitution because he has an adequate remedy at law."  (Doc. 6 at 14.)  The defendants are wrong because the Unusual Punishment Clause of the Utah Constitution has been found to be self-executing.  *Spackman v. Board of Educ.*, 16 P.3d 533, 535 (Utah 2000) (citing *Bott V. Deland*, 922 P.2d 732, 737-38 (Utah 1996).

To proceed on a claim for monetary damages under the Utah Constitution, a plaintiff must prove three things: (1) a flagrant violation of his constitutional rights; (2) that existing remedies do not redress his or her injuries; and (3) that equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries.  *Spackman*, 16 P.3d at 539.

The plaintiff has already outlined his argument that he incurred a flagrant violation of his constitutional rights which is "[i]n essence . . . that a defendant must have violated 'clearly established' constitutional rights 'of which a reasonable person would have known.'"  *Id.*  The allegations show that the Washington County Defendants has policies and procedures in place that deprived Crowson of reasonably access to appropriate

medical care for his serious medical needs for at least six days. That is sufficient to show a flagrant violation.

Second, there are still many questions of fact that need to be explored and addressed before the Court can determine whether there are existing remedies that will redress Crowson's injuries. The Washington County Defendants have already vigorously argued that §1983 does not provide Crowson a remedy. The Court should defer decision on whether there are other adequate remedies until a later stage in the litigation.

For these reasons, the Court should deny the Motion to Dismiss as to the claim for violation of the Utah Constitution.

### VI. THE UTAH GOVERNMENTAL IMMUNITY ACT DOES NOT PROVIDE IMMUNITY FOR NEGLIGENCE AND IT IS UNCONSTITUTIONAL AS APPLIED TO INTENTIONAL TORTS

The defendants have argued that they are immune from suit for state law claims under the Utah Governmental Immunity Act because immunity is not waived for an injury that: (1) "arises out of, in connection with, or results from false imprisonment . . . or a violation of civil rights" -- Utah Code Ann. § 67G-7-201(5)(b) (2015); or (2) "arises out of, in connection with, or results from . . . the incarceration of any person in any state prison, county or city jail, or other place of legal confinement" – Utah Code Ann. § 63G-7-201(5)(j) (2015).  (Doc. 6 at 19.)

The biggest problem with the defendants' argument is that the plaintiff's state law claims sound in negligence. The defendants have conceded that the Utah Governmental Immunity Act provides a waiver for negligent conduct. (Doc. 6 at 18.)

The defendants' argument, however, focuses on provisions of the Utah Governmental Immunity Act that would be unconstitutional if applied because they violate the

Unnecessary Rigor clause of the Utah Constitution, Article I, Section 9.  See *Bott*, 922 P.2d at 736.  ""Constitutional rights serve to restrict government conduct. These rights would never serve this purpose if the state could use governmental immunity to avoid constitutional restrictions."  *See id.*

VII. **IF THE COURT DISMISSES THE STATE LAW CLAIMS FOR FAILURE TO FILE AN UNDERTAKING, THE PROPER REMEDY IS DISMISSAL WITHOUT PREJUDICE**

The defendants have cited *Rippstein v. City of Provo*, 929 F.2d 576 (10th Cir. 1991) to support their argument that Crowson has not complied strictly with the Utah Governmental Immunity.  The *Rippstein* court noted that the proper remedy is dismissal without prejudice.  *Id.* (*citing Hansen v. Salt Lake County*, 794 P.2d 838, 840 (Utah 1990).

The Court should allow the plaintiff an opportunity to file the undertaking prior to dismissal without prejudice.  The plaintiff will file the bond with the clerk of the court as soon as reasonably practicable, but in no event prior to the Court's decision on this motion.

VIII. **THE PLAINTIFF IS FINANCIALLY INCAPABLE OF FILING A BOND PURSUANT TO UTAH CODE ANN. §78B-3-104**

Sheriff Pulsipher has argued he cannot be sued unless the plaintiff files a bond "in an amount to be determined by the court," that "shall cover all estimated costs and attorney fees the officer may be expected to incur in defendant the action, in the event the officer prevails." Utah Code Ann. §78B-3-104.

That statute is unconstitutional because it creates an insurmountable barrier to Crowson in accessing the courts.  Crowson is incarcerated in the Utah State Prison system.  He earns very little money at the prison and is not independently wealthy.  He has hired counsel on a contingency fee basis because he cannot afford to pay an attorney

an hourly rate. The County will undoubtedly incur tens of thousands of dollars in attorney's fees defending Sheriff Pulsipher in this action. If the Court were to require Crowson to post a bond that will cover all estimated costs and attorney fees, Crowson will not be able to prosecute his case.

Article I, section 11 of the Utah Constitution is part of the Declaration of Rights. It declares that an individual shall have a right to a "remedy by due course of law" for injury to "person, property, or reputation." Specifically, that section states:

> All courts shall be open, and every person, for an injury done to him in his person, property, or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this state, by himself or counsel any civil cause to which he is a party.

*Berry v. Beech Aircraft Corp.*, 717 P.2d 670 (Utah 1985). "A plain reading of section 11 also establishes that the framers of the Constitution intended that an individual could not be arbitrarily deprived of effective remedies designed to protect basic individual rights. A constitutional guarantee of access to the courthouse was not intended by the founders to be an empty gesture; individuals are also entitled to a remedy by 'due course of law' for injuries to 'person, property, or reputation.'" *Id.* at 675.

The application of Section 78B-3-104 would be unconstitutional if applied to Crowson because it would deprive him of a remedy by due course of law. The Court is not required to strictly comply with state procedures that produce inconsistent results. *See Felder v. Casey,* 487 U.S. 131, 138 (1988) (concluding 120-day notice requirement conflicted with the purpose and effect of § 1983 and produced inconsistent outcomes).

Should the Court apply that section to Sheriff Pulsipher, the application must be limited to state law claims against Pulsipher only.

### **CONCLUSION**

The Court should deny the Washington County Defendants' Motion to Dismiss for the reasons stated above. The allegations in the Amended Complaint (and Complaint) are sufficient to put the defendants on notice of the basis of the claim and that present a set of facts upon which it is plausible the plaintiff will prevail. The remaining issues present factual issues that must be reserved until after completion of fact discovery.

DATED this 25th day of March, 2016.

SCHRIEVER LAW FIRM

/s/ Ryan J. Schriever
_____
Ryan J. Schriever
*Attorneys for Plaintiffs*