Ryan J. Schriever (Bar No. 10816)
THE SCHRIEVER LAW FIRM
P.O. Box 701
Springville, UT 84663
Telephone: (801) 574-0883
Fax: (801) 515-8686
ryan@schrieverlaw.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| MARTIN CROWSON,<br><br>Plaintiff,<br><br>vs.<br><br>WASHINGTON COUNTY, et al.,<br><br>Defendants. | **MEMORANDUM IN OPPOSITION TO DEFENDANT MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Case No. 2:15-CV-880-TC<br><br>Judge Tena Campbell |

Plaintiff Martin Crowson, by and through counsel, submits this Memorandum in Opposition to Motion for Judgment on the Pleadings. The Court has scheduled oral arguments for January 31, 2017 at 10:00 AM. The plaintiff relies on that schedule and affirms that he requests oral arguments on the defendants' motions.

**INTRODUCTORY STATEMENT**

The instant motion is actually a partial Motion for Judgment on the Pleadings as it does not apply to the plaintiff's federal law claims. (Doc. 38 at 2.) The Washington County Defendants have conceded that the federal law claims should proceed to the summary judgment phase, but they have argued that the federal law claims against Sheriff

Pulsipher should be dismissed on the basis of qualified immunity. In addition, the Washington County defendants have argued Sheriff Pulsipher is entitled to attorney's fees under Utah Code Ann. §78B-3-104.

The Court should deny most of the defendants' motion because Sheriff Pulsipher is not entitled to qualified immunity nor is he entitled to attorney's fees or costs.

## ARGUMENT

### I. LEGAL ISSUES NOT DISPUTED

For purposes of this motion, the plaintiff does not dispute certain legal issues raised by the defendants. However, given the fact that the parties have not conducted discovery, the plaintiff requests that any legal issues dismissed pursuant to this motion be dismissed without prejudice.

1. Based on these defendants' representation, the plaintiff does not dispute that Washington County Sheriff's Department and the Washington Purgatory Correctional Facility are not separate legal entities from Washington County. In making this concession, the plaintiff relies on these defendants' assertion that Washington County is the correct political subdivision.

2. The plaintiff does not dispute the dismissal of his state law claims without prejudice and will proceed on his federal law claims.

### II. SHERIFF PULSIPHER IS NOT ENTITLED TO QUALIFIED IMMUNITY

The Court should deny the defendants' motion as to Sheriff Pulsipher's qualified immunity defense to allow the plaintiff an opportunity to conduct some discovery. The

defendants have elected to caption their motion as one for judgment on the pleadings under Rule 12(c), but it is essentially a motion to dismiss under Rule 12(b)(6) because it challenges the sufficiency of the allegations in the Amended Complaint.

When considering such a motion, the District Court "must accept all allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Even under *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Court may allow a well-pleaded complaint to proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Id.* *Twombly* states "that the complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Robbins,* 519 F.3d at 1247 (citing *Twombly*, 127 S.Ct. at 1974). ''[P]lausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.*

Normally, the viability of a §1983 claim is raised in a Motion for Summary Judgment under Rule 56. *See e.g.*, *Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005); *Self v. Crum*, 439 F.3d 1227 (10th Cir. 2006); *Sealock v. State of CO*, 218 F.3d 1205 (10th Cir. 2000). That is because the issues are highly fact intensive, the parties are entitled to conduct discovery, and the defendants are in control of information that the plaintiff does not have access to without discovery. It is rare for courts to address the viability of §1983 claim on a pre-discovery motion.

In *Robbins*, the Tenth Circuit noted that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context . . ."  *Robbins*, 519 F.3d at 1248.  In the context of a §1983 claim, "plaintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time. This requires enough allegations to give the defendants notice of the theory under which their claim is made." *Id.* at 1249.

"This does not mean that complaints in cases subject to qualified immunity defenses must include all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law."  *Id.*  However, the complaint must contain "allegations sufficient to make clear the 'grounds' on which the plaintiff is entitled to relief." *Id.*

In this case, the Amended Complaint contains sufficient allegations to put the defendants on notice of the grounds for the lawsuit, and it provides sufficient notice to the defendants that they can adequately investigate the case and prepare their defenses.  In *Brown v. Plata*, 131 S.Ct. 1920 (2011), the U.S. Supreme Court found constitutional violations based on "system wide deficiencies in the provision of . . . mental health care that, taken as a whole, subject ... mentally ill prisoners in California to 'substantial risk of serious harm' and cause the delivery of care in the prisons to fall below the evolving standards of decency that mark the progress of a maturing society."  *Id.*

The allegations show there was a systemic failure at Purgatory Jail that resulted in Martin Crowson's deprivation of civil liberties.  *See Graves v. Arpaio*, 48 F.Supp.3d 1318, 1326 (D. Ariz. 2014) (finding liability against the Sheriff of Maricopa County for

constitutional violations when he failed to resolve "systemic deficiencies in providing pretrial detainees timely face-to-face assessment by medical and mental health providers for serious acute or chronic complex conditions."); *see also Schwartz v. Lassen County ex rel. Lassen County Jail (Detention Facility*), 838 F. Supp. 2d 1045 (E.D. Cal. 2012).

Crowson's allegations are that Sheriff Pulsipher was responsible for running a correctional facility that had a policy of placing inmates in solitary confinement for exhibiting symptoms of a significant brain injury and leaving them in solitary confinement for multiple days without adequate or reasonable medical care. This was not conduct isolated to one rogue individual, but rather a systemic pattern of neglect and reckless indifference that involved multiple individual defendants engaged in the same recklessly indifferent conduct. The pattern of behavior demonstrated that there were policies in place that encouraged corrections employees to act in reckless disregard of the rights of the inmates.

The allegations show that, on day nine of his incarceration, Crowson appeared dazed and confused. He was not able to answer questions coherently with anything more than one word responses. His pupils were dilated. Following policy and procedures, Officer Bret Lyman put him in solitary confinement in a detox cell rather than having him evaluated for medical care. For the next six days, the staff and officers at Purgatory Correctional Facility followed policies and procedures when they ignored Crowson's objectively obvious brain injury symptoms and provided Crowson with completely inadequate and improper care.

Rather than immediately sending Crowson to an outside emergency room for adequate care, the prison staff followed a policy of disregarding obvious brain injury

symptoms and they placed Crowson's life in jeopardy through inadequate and inappropriate treatment. Despite obvious brain injury symptoms, Crowson's care consisted of a lung X-ray and an excessive dose of Librium. The prison staff did not conduct any testing or treatment for a brain injury despite repeatedly noting that Crowson was demonstrating symptoms of cognitive decline. The Constitution requires a prison to have policies that require its staff to do more than sit back and watch an inmate's cognitive function decline over multiple days.

The policies put in place by Sheriff Pulsipher and Washington County encouraged and promoted the deliberate indifference of the corrections officers and facility medical staff. Those policies also encouraged an unconstitutional delay in providing adequate care. In *Brown v. Plata*, 131 S.Ct. 1910 (2011), Justice Kennedy expressed concerns about a delay of eight hours to a prisoner who was experiencing chest pain due to the systemic failure of the California prison system.

If a person were to enter a hospital emergency room demonstrating the same symptoms Crowson displayed, the emergency room personnel would immediately begin assessing him for a brain injury. The emergency personnel would take immediate action, or they would be sued for malpractice. They would not wait days, hours, or even minutes to initiate diagnostic testing of the patient's brain and cognitive function.

At the very least, Crowson should be entitled to conduct discovery before the Court enters the harsh result of dismissing his claim. Crowson was seriously injured, and his allegations are sufficient to demonstrate a plausible claim for damages against Sheriff Pulsipher and the other defendants.

The Washington County Defendants have argued that Crowson has not alleged every fact necessary to prove his claims, but there are sufficient facts alleged to satisfy the standard of review for a pre-discovery motion to dismiss. These defendants will have the option of filing a motion for summary judgment after the facts have been developed. At that stage of the litigation, the burden will be on Crowson to show admissible evidence to prove his claims.

## III. SHERIFF PULSIPHER IS NOT ENTITLED TO ATTORNEY'S FEES OR COSTS

The Court should deny Sheriff Pulsipher's request for dismissal based on the lack of a bond. Sheriff Pulsipher has argued he cannot be sued unless the plaintiff files a bond sufficient to "cover all estimated costs attorney fees the officer may be expected to incur in defendant the action, in the event the officer prevails." Utah Code Ann. §78B-3-104.

### A. Section 78B-3-104 Violates the Open Courts Clause and the Uniform Operation Provision of the Utah Constitution

Section 78B-3-104 is unconstitutional for two reasons. First, it violates the Open Courts Clause of the Utah Constitution because it creates an insurmountable barrier to Crowson's, and other inmate's, access to the courts. By making the bond requirement a jurisdictional issue, the Utah legislature has effectively deprived inmates of the ability to assert state law claims against correctional officers for injuries.

Crowson is incarcerated in the Utah State Prison system. He earns very little money at the prison and is not independently wealthy. According to data published by the State of Utah, the median value of an inmate account in the State of Utah is less than $5.73. (available at http://www.le.state.ut.us/audit/ad7_90.htm (last visited 11/14/2016)). If courts were to require inmates to post a bond that will cover all estimated costs and

attorney fees in cases against correctional officers, inmates would never be able to prosecute their cases.

Article I, section 11 of the Utah Constitution is part of the Declaration of Rights. It declares that an individual shall have a right to a "remedy by due course of law" for injury to "person, property, or reputation." Specifically, that section states:

> All courts shall be open, and every person, for an injury done to him in his person, property, or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this state, by himself or counsel any civil cause to which he is a party.

*Berry v. Beech Aircraft Corp*., 717 P.2d 670 (Utah 1985). “A plain reading of section 11 also establishes that the framers of the Constitution intended that an individual could not be arbitrarily deprived of effective remedies designed to protect basic individual rights. A constitutional guarantee of access to the courthouse was not intended by the founders to be an empty gesture; individuals are also entitled to a remedy by ‘due course of law’ for injuries to ‘person, property, or reputation.’” *Id.* at 675.

The application of Section 78B-3-104 would be unconstitutional if applied to Crowson because it would deprive him of a remedy by due course of law. The Court is not required to strictly comply with state procedures that produce inconsistent results. *See Felder v. Casey,* 487 U.S. 131, 138 (1988) (concluding 120-day notice requirement conflicted with the purpose and effect of § 1983 and produced inconsistent outcomes).

To survive a challenge under the Open Courts Clause, a statute that has the effect of abrogating an inmate’s access to the court system must provide an effective and reasonable alternative remedy by due course of law which is “substantially equal in value or other benefit to the remedy abrogated.” *Berry*, 717 P.2d at 680. And “if there is no

substitute or alternative remedy provided, abrogation of the remedy . . . may be justified only if there is a clear social or economic evil to be eliminated and the elimination of an existing legal remedy is not an arbitrary or unreasonable means for achieving the objective." *Id.*

The effect of section 78B-3-104 is to abrogate an inmate's remedy for injuries caused by an officer and the statute does not provide an alternative remedy. If an inmate cannot afford to post a bond to cover "all estimated costs and attorney fees the officer may be expected to pay," then the Court may not exercise jurisdiction over the inmate's claim. Utah Code Ann. §78B-3-104(2).

Further, this statute is not "narrowly tailored" to eliminate a clear social or economic evil. *See Judd v. Drezga*, 2004 UT 91, 103 P.3d 135 (applying the *Berry* factors). The bond requirement does not contain any exception for inmates or other impecunious persons. It does not set a limit on the bond amount that considers the ability of the plaintiff to pay the bond. Instead, it requires the Court to establish a bond in an amount sufficient to literally preclude most people from being able to afford to prosecute a case of injury caused by a law enforcement officer. For these reasons, the bond requirement violates the Open Courts Clause.

Second, section 78B-3-104 is unconstitutional because it violates the Uniform Operation Provision of the Utah Constitution. *See* State v. Canton, 2013 UT 44, 308 P.3d 517 (2013). "That clause requires that '[a]ll laws of a general nature shall have uniform operation.'" *Id*. ¶34 (quoting UTAH CONST. art. I, § 24). This provision has been interpreted as "a state-law counterpart to the federal Equal Protection Clause." *Id.* ¶35. Utah "cases articulate a three-step test for enforcing this guarantee." *Id.* First, the Court

must consider "what classifications the statute creates." *Id.* Second, the Court must address "whether different classes . . . are treated disparately." *Id.* "And finally, if there is disparate treatment between classes, [the courts] assess whether the legislature had any reasonable objective that warrants the disparity." *Id*. (internal quotation marks omitted).

This statute creates a special class of people (law enforcement officers) who are protected by a special statute and it discriminates against a vulnerable class of people (the poor and the indigent) who cannot afford to pay the attorney's fees a law enforcement officer will incur. The requirements of Utah Code Ann. §78B-3-104 are onerous. The statute requires a person injured by a law enforcement officer to first appear before a judge and have the judge speculate about the approximate amount of attorneys' fees and costs the officer will incur in the action. Then, the plaintiff must post a bond in that entire amount as a pre-condition to filing a complaint. Finally, if the plaintiff loses the lawsuit, he or she must pay the attorney's fees and costs incurred by the officer.

The officer, on the other hand, bears no risk of personal liability. If the officer loses, the plaintiff may recover attorney's fees from "the official bond of the officer." Utah Code Ann. §78B-3-104. The effect of the statute is to deprive all but the wealthiest injured persons from seeking a redress of their grievances against law enforcement officers.

The result is that the statute creates a two-tiered system of injustice. A system that is prohibitive, oppressive, and discriminatory for those injured by law enforcement officers. A system in which the wealthy will have access to justice, and in which the poor must suffer due to their inability to afford the prohibitively high cost of access to the judiciary. For these reasons, section 78B-3-104 is not constitutional and the Court should not require Crowson to pay Sheriff Pulsipher's attorney's fees.

**B. The Court Should Defer Any Ruling on Attorney's Fees**

In the alternative, the Court should defer ruling on the issue of attorney's fees and costs. At this early state of the litigation, the case is far from being decided. The Court should defer ruling on attorney's fees until the case is fully and finally resolved. *See e.g.*, *Ellis v. Stoney*, Case No. 2:12-CV-335 TS (deferring to rule on attorney's fees under Utah Code Ann. §78B-3-104).

**C. The Defendants' Request Only Applies to Sheriff Pulsipher**

In the event the Court grants Sheriff Pulsipher's request for attorney's fees, the Court should only award fees for time spent on issues related solely to Sheriff Pulsipher. Counsel has multiple clients and most of them are not entitled to fees under section 78B-3-104 under any circumstances. Further, the fees should be limited to time spent working on Sheriff Pulsipher's defenses to the state law claims because the plaintiff's federal claims are not subject to the bond requirement of Utah Code Ann. §78B-3-104.

**CONCLUSION**

The Court should grant in part and deny in part the defendants' partial motion for judgment on the pleadings.

DATED this 14th day of November, 2016.

SCHRIEVER LAW FIRM

/s/ Ryan J. Schriever

Ryan J. Schriever
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 14th day of November, 2016, a true and correct copy of the foregoing Memorandum in Opposition to Motion for Judgment on the Pleadings was filed using the Court's CM/ECF filing system which automatically generated notice to the following:

Shawn McGarry
smcgarry@kippandchristian.com
Gary T. Wight
gwight@kippandchristian.com

Frank D. Mylar
Mylar-law@comcast.net

Service by U.S. Mail, postage pre-paid was made on the following:

Sean D. Reyes
Office of the Utah Attorney General
Utah State Capitol Complex
350 North State Street, Suite 230
Salt Lake City, UT 84114-2320

/s/ Ryan J. Schriever

______________________________