Frank D. Mylar (5116)
MYLAR LAW, P.C.
2494 Bengal Blvd.
Salt Lake City, Utah 84121
Phone: (801) 858-0700
FAX: (801) 858-0701
Mylar-Law@comcast.net

Attorney for Washington County Defendants

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MARTIN CROWSON,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON COUNTY, et al.,<br><br>Defendants. | **DECLARATION OF MICHAEL JOHNSON IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:15-CV-880-TC<br><br>District Judge Tena Campbell |

I, Michael Johnson, state that the following statements are true and based upon my personal knowledge:

1. I am a registered nurse and currently work at the Washington County Jail, also referred to as Purgatory. I have worked as a nurse at the jail for fourteen years. I was in this position in June-July 2014 when the events that gave rise to this lawsuit took place.

2. At all relevant times I have been licensed by the State of Utah. I have never been disciplined as a nurse and I have never had my license suspended or revoked. I have also attended several national conferences on correctional nursing.

3. As a jail nurse, I administer medications to inmates, check vital signs, and report my assessments to doctors and mental health professionals when indicated. However, by law, I cannot prescribe medications for an inmate patient or diagnose any medical condition. Generally, any diagnosis or prescription would have to come from a doctor.

4. I reviewed the Complaint Plaintiff Martin Crowson filed against me.

5. I also reviewed the notes I recorded about Plaintiff in the jail's electronic medical record (CorEMR) system. These notes include observations I recorded about Plaintiff in June 2014. I have general recollections about Plaintiff since he was at the Jail on numerous occasions

6. I know that the information on these notes is accurate because it is my practice to accurately document pertinent patient assessments in the CorEMR system after a significant interaction with a patient inmate.

7. I am a custodian of records and have direct computer access to records made on the CorEMR system. I am charged with safely keeping these records in the ordinary course of business. These records cannot be changed once they have been created.

8. An exact copy of Plaintiff's CorEMR records have been attached to this declaration as Exhibit 4.

9. On the morning of June 25, 2014 jail deputies reported to me that Plaintiff was acting different than normal. I interviewed Plaintiff about 7:00 a.m. and I observed that he seemed quiet and reserved, which was different from how he normally acted. (Bates 481) (Depo. 44:20-25; 45:9-25; 46:6-13).

10. During this interview I also checked Plaintiff's vital signs, which were within normal limits, and I encouraged him to eat his breakfast.

11. After my interview, I was concerned Plaintiff may be suffering from some medical problem. Therefore, I instructed jail deputies to move Plaintiff to a medical housing cell in the booking area so that his health and safety could be better monitored by staff. Medical housing cells are in the booking area of the Jail and these inmates are observed on a frequent basis. I also requested further evaluation for Plaintiff from Jon Worlton.

12. Later on June 25, 2014 at approximately 3 p.m. I checked on Plaintiff again. I observed that his pupils were dilated but were reactive to light. I observed that Plaintiff was alert and oriented. Because of this I thought Plaintiff was alright and left the Jail after my shift ended.

13. I did not work at the jail on June 26 or 27, 2014 but observed Plaintiff again on June 28, 2014 at approximately 2:00 p.m. At that time, Plaintiff was confused and disoriented and had elevated blood pressure. However, he seemed to be making a little more sense than when I had seen him on the 25th. After meeting with Plaintiff, I reported my observations to the jail physician, Dr. Judd LaRowe, who asked that Plaintiff be given a chest x-ray to rule out any lung issues and have blood drawn for testing. However, I was not able to draw Plaintiff's blood due to vein scarring and his uncooperative nature. I reported this to Dr. LaRowe.

14. Before my shift ended on June 28, 2014 I again took Plaintiff's vital signs noted them in the CorEMR system. This was approximately 4:00 p.m.

15. The next day, June 29, 2014, at approximately 7:45 a.m. I saw Plaintiff again. I took his vitals and noted an elevated heart rate. I also observed that Plaintiff was still acting dazed and confused. I reported my observations to Dr. LaRowe who prescribed, and instructed me to administer, 2 milligrams of Ativan to Plaintiff.

16.     I checked on Plaintiff about an hour later. He was sleeping peacefully, and his vital signs had returned to normal.

17.     I checked on Plaintiff again at 3:30 p.m. on June 29, 2014. Plaintiff was better able to verbalize his thoughts and his vital signs remained stable. Plaintiff related to me that he couldn't remember the last five days. I informed Plaintiff he was in a medical cell and that the jail doctor had prescribed him medications that he would start receiving on a regular basis to help his condition. Plaintiff agreed to take the medications as they were disbursed and prescribed.

18.     On June 30, 2014 I was assigned to the general population section of the jail and another nurse was assigned to the booking area where the medical cells are located. Because I was not working in the booking area, I had no interactions with Plaintiff on the 30th and, in fact, no further interactions prior to his transfer to the emergency room on July 1, 2014.  I, further, never heard any complaints or concerns about Plaintiff's health and well-being.

19.     During the interactions I had with Plaintiff during this time, I attempted to give Plaintiff the best medical care possible for his situation. That appropriate care included times when I had him moved to a medical cell for his health and safety, I regularly checked his vital signs, reported my observations of Plaintiff to the doctor, and administered prescribed medications to Plaintiff.  I deferred to Dr. LaRowe's diagnosis and treatment plan and always believed Plaintiff was receiving appropriate medical care.

20.     I was never instructed to send Plaintiff to the hospital and at no time did I feel there was an urgency to Plaintiff's medical condition.  I believed it was possible Plaintiff was experiencing withdrawals from drugs and this just required medical observation, which he received.

## DECLARATION UNDER PENALTY OF PERJURY

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury, that the above sworn statements are true and based upon my personal knowledge and experience.

Dated this 30th day of August, 2018.

*/s/ Michael Johnson\**
Michael Johnson
Washington County Jail Nurse

\*Original Document with original signature is available for inspection at counsel's office upon request.